UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on April 29, 2005

| UNITED STATES OF AMERICA | : | CRIMINAL NUMBER: |
| --- | --- | --- |
| | : | |
| | : | GRAND JURY ORIGINAL |
| | : | |
| | : | VIOLATIONS: |
| v. | : | |
| | : | 18 U.S.C. § 371 (Conspiracy); |
| ROBERT L. HALL, JR., | : | 18 U.S.C. § 1344 (Bank Fraud); |
| ANTHONY RIVERA, & | : | 18 U.S.C. § 1341 (Mail Fraud); |
| THOMAS ALSTON | : | 18 U.S.C. § 1957 (Money Laundering); |
| | : | 18 U.S.C. § 2 (Causing an Act to be |
| | : | Done; Aiding and Abetting); |
| | : | 22 D.C. Code § 3211 |
| Defendants. | : | (First Degree Fraud); |
| | : | 18 U.S.C. § 982(a)(2)(A) |
| | : | (Criminal Forfeiture) |

## INDICTMENT

The Grand Jury charges that:

### COUNT ONE – CONSPIRACY

At all times material to this Indictment:

### INTRODUCTION

#### The Parties

1. Defendant ROBERT HALL owned and operated a company known as First United Financial Group (FUFG). FUFG's offices were located at 240 Parker Street, N.E., in the District of Columbia. Defendant HALL also established a company known as United Construction (UC).

2. Defendant ANTHONY RIVERA was an acquaintance of defendant HALL.

3. Defendant THOMAS ALSTON was an employee of FUFG.

### FUFG and United Construction

4. FUFG's stated business objective was to solicit money from individuals in order to invest that money in certain District of Columbia real estate ventures and promise these individuals a specific rate of monetary return.

5. Defendant HALL's title was the Chief Executive Officer (CEO) and Managing Member of FUFG and UC. As such, HALL had authority over all FUFG and UC bank accounts and business transactions.

6. As a result of defendant HALL's false representations and promises, many FUFG investors lost significant portions of their life savings.

### Sterling Trust Company and Matrix Capital Bank

7. Sterling Trust Company (Sterling Trust) was a financial institution whose principal place of business was Waco, Texas.

8. Matrix Capital Bank (Matrix) was a financial institution whose assets were insured by the Federal Deposit Insurance Corporation and whose principal place of business was Denver, Colorado. Sterling Trust maintained business bank accounts at Matrix.

### THE CONSPIRACY

9. From between in or about July, 2002 until in or about October, 2003, in the District of Columbia and elsewhere, defendants ROBERT HALL, ANTHONY RIVERA, and THOMAS ALSTON and others known and unknown to the Grand Jury, did unlawfully and knowingly combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, that is:

   a. to commit the offense of bank fraud, in violation of Title 18, United States Code,

Section 1344.

    b. to commit the offense of mail fraud, in violation of Title 18, United States Code, Section 1341.

A Goal of the Conspiracy

    10. A goal of the conspiracy was for the coconspirators ROBERT HALL, ANTHONY RIVERA, and THOMAS ALSTON to unlawfully enrich themselves by fraudulently obtaining $90,000 in monies from the Sterling Trust Company and Matrix Capital Bank by means of false pretenses, representations, and promises.

Manner and Means of the Conspiracy

    11. In order to achieve the goal of the conspiracy, defendants ROBERT HALL, ANTHONY RIVERA, and THOMAS ALSTON used the following manner and means, among others:

    A. In or about July, 2002, defendant HALL solicited individuals to invest monies with FUFG that individuals held in Individual Retirement Accounts (IRA). Defendant HALL would persuade potential investors to rollover their IRA monies into FUFG. Defendant HALL would falsely tell FUFG investors that he was going to invest their IRA money in real estate in Washington, D.C., and would falsely promise specific rates of monetary return.

    B. In or about July, 2002, defendant HALL engaged Sterling Trust as a trustee for transfers of IRA monies from FUFG investor IRA accounts to FUFG. To make it appear that FUFG was a lawful business organization, defendant HALL provided Sterling Trust with false information including, among other things, a copy of a real estate prospectus and the FUFG articles of incorporation.

    C. On or about August 15, 2003, defendant HALL opened a bank account at United

Bank for FUFG.

    D.  On or about September 2, 2003, defendants HALL and ALSTON submitted to Sterling Trust a Traditional Individual Retirement Account Adoption Agreement.  In the Agreement, defendants HALL and ALSTON represented that ALSTON had $30,000 in a qualified employer retirement plan at UC.  In truth and in fact, defendant ALSTON had no IRA at either UC or FUFG.

    F.  On or about September 2, 2003, defendant HALL drew a check for $30,000 on UC's Bank of America account controlled by HALL and made the check payable to "Sterling Trust Company FBO Thomas Alston."  In truth and in fact, as defendants well knew, there were insufficient funds in the account to pay this check and this account had a negative account balance in excess of $10,000.

    G.  On or about September 2, 2003, defendant HALL and ALSTON submitted to Sterling Trust an Investor Direction and Certification Form directing Sterling Trust to transfer $30,000 from the IRA at Sterling Trust to FUFG.

    H.  On or about September 2, 2003, defendants HALL and RIVERA submitted to Sterling Trust a Traditional Individual Retirement Account Adoption Agreement.  In the Agreement, defendants HALL and RIVERA represented that RIVERA had $30,000 in a qualified employer retirement plan at UC.  In truth and in fact, defendant RIVERA had no IRA at either UC or FUFG.

    I.  On or about September 2, 2003, defendant HALL drew a check for $30,000 on UC's Bank of America account controlled by HALL and made the check payable to "Sterling Trust Company FBO Anthony Rivera."  In truth and in fact, as defendants well knew, there were insufficient funds in the account to pay this check and this account had a negative account

balance in excess of $10,000.

    J.  On or about September 2, 2003, defendants HALL and RIVERA submitted to Sterling Trust an Investor Direction and Certification Form directing Sterling Trust to transfer $30,000 from the IRA at Sterling Trust to FUFG.

    K.  On or about September 5, 2003, defendants HALL, ALSTON and RIVERA, directed Sterling Trust to wire the funds to a bank account at The National Capital Bank in Washington, D.C., which was controlled by defendant RIVERA under the name of "Developers Incorporated."

    L.  On or about September 8, 2003, Sterling Trust's bank, Matrix Bank, wired a total of $89,940 to defendant RIVERA's Developers Incorporated account at National Capital Bank.

    M.  On or about September 9, 2003, defendant RIVERA negotiated a $20,000 check for cash on his Developers Incorporated account at The National Capital Bank.

    N.  On or about September 9, 2003, defendant RIVERA negotiated a check for $67,572 on his Developers Incorporated account at The National Capital Bank and directed National Capital Bank to issue the following cashier's checks:

    (1) three cashier's checks totaling $22,500 made payable to defendant RIVERA;

    (2) three cashier's checks totaling $22,500 made payable to defendant HALL; and

    (3) three cashier's checks totaling $22,500 made payable to defendant ALSTON.

    O.  On or about September 9 and September 10, 2003, defendants HALL, RIVERA, and ALSTON, negotiated these cashier's checks for cash or deposit into other accounts controlled by them.

## Overt Acts

    12.  Within the District of Columbia and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, defendants ROBERT HALL,

ANTHONY RIVERA, and THOMAS ALSTON and others known and unknown to the Grand Jury, committed the following overt acts, among others:

(1) On or about August 15, 2003, defendant HALL opened bank account number xxxxx3433 at United Bank.

(2) On or about September 2, 2003, defendant ALSTON sent or caused to be sent to Sterling Trust by Federal Express delivery a Traditional Individual Retirement Custodial Adoption Agreement stating that ALSTON had $30,000 in a qualified retirement plan.

(3) On or about September 2, 2003, defendant RIVERA sent or caused to be sent to Sterling Trust by Federal Express delivery a Traditional Individual Retirement Custodial Adoption Agreement stating that RIVERA had $30,000 in a qualified retirement plan.

(4) On or about September 2, 2003, defendant HALL drew and signed check number 6078 from Bank of America account number xxxxxxx2260 payable to "Sterling Trust Company FBO Thomas Alston" in the amount of $30,000.

(5) On or about September 2, 2003, defendant HALL drew and signed check number 6077 from Bank of America account number xxxxxxx2260 payable to "Sterling Trust Company FBO Anthony Rivera" in the amount of $30,000.

(6) On or about January 23, 2003, defendant RIVERA opened a bank account, account number xxxxxx2215, at The National Capital Bank in the name of Developers Incorporated.

(7) On or about September 5, 2003, defendant RIVERA directed Sterling Trust to wire the proceeds of the IRA funds held by Sterling Trust in his name to the Developers Incorporated bank account at the National Capital Bank.

(8) On or about September 5, 2003, defendants HALL and ALSTON directed Sterling Trust to wire the proceeds of the IRA funds held by Sterling Trust in his name to the Developers

6

Incorporated bank account at the National Capital Bank.

(9) On or about September 9, 2003, defendant RIVERA drew check number 751 on The National Capital Bank account number xxxxxx2215 in the amount of $20,000 and negotiated that check for cash.

(10) On or about September 9, 2003, defendant RIVERA drew check number 753 on The National Capital Bank account number xxxxx2215 in the amount of $67,572.

(11) On or about September 10, 2003, defendant ALSTON opened an account at The National Capital Bank.

(12) On or about September 10, 2003, defendant ALSTON cashed National Capital Bank cashier's check number 65752 in the amount of $15,000 made payable to Thomas Alston.

(13) On or about September 9, 2003, defendant RIVERA cashed National Capital Bank cashier's check number 65749 in the amount of $15,000 made payable to Anthony Rivera through an ACE Cash Express account controlled by RIVERA.

(14) On or about September 10, 2003, defendant HALL negotiated National Capital Bank cashier's check number 65746 in the amount of $15,000 made payable to Robert Hall for cash.

**(Conspiracy, Aiding and Abetting, Causing an Act to be Done, in violation of Title 18 United States Code, Sections 371 and 2)**

### COUNT TWO – BANK FRAUD

1. Paragraphs one through eight and ten through twelve of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2. At all times material to this indictment, Matrix Bank was a financial institution whose assets were insured by the Federal Deposit Insurance Corporation.

3. From on or about July, 2002, until in or about October, 2003, in the District of

Columbia and elsewhere defendants ROBERT HALL, ANTHONY RIVERA, and THOMAS ALSTON devised a scheme and artifice to defraud Matrix Bank and to obtain moneys and assets, owned by or under the custody or control of Matrix Bank, by means of false and fraudulent pretenses and representations.

**(Bank Fraud, Aiding and Abetting, Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 1344 and 2)**

### COUNT THREE – BANK FRAUD

1. Paragraphs one through eight and ten through twelve of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2. At all times material to this indictment, The National Capital Bank was a financial institution whose assets were insured by the Federal Deposit Insurance Corporation.

3. From on or about July, 2002, until in or about October, 2003, in the District of Columbia and elsewhere defendants ROBERT HALL, ANTHONY RIVERA, and THOMAS ALSTON devised a scheme and artifice to defraud The National Capital Bank and to obtain moneys and assets, owned by or under the custody or control of The National Capital Bank, by means of false and fraudulent pretenses and representations.

**(Bank Fraud, Aiding and Abetting, Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 1344 and 2)**

### COUNTS FOUR THROUGH SIX – MAIL FRAUD

1. Paragraphs one through eight and ten through twelve of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2. From between in or about July, 2002, until in or about October, 2003, in the District of Columbia and elsewhere, defendants ROBERT HALL, THOMAS ALSTON, and ANTHONY RIVERA, did knowingly devise a scheme and artifice to defraud Sterling Trust and Matrix Bank

of monies by means of false and fraudulent pretenses and representations, the manner and means of which are described in Count One, and for the purpose of executing such scheme use the an interstate commercial carrier and the United States mail.

    3.    On or about the dates set forth below, defendant ROBERTS HALL, THOMAS ALSTON, and ANTHONY RIVERA, in the District of Columbia, for the purpose of executing the above-described scheme and artifice to defraud and deprive, did cause to be placed in the custody of a commercial interstate carrier or the United States Postal Service the following items:

| COUNT | DATE | MAIL MATTER | MAILED FROM | MAILED TO |
|---|---|---|---|---|
| FOUR | 9/2/03 | Federal Express package containing Investor Direction and Certification for Anthony Rivera in the amount of $30,000 | FUFG offices, 240 Parker Street, N.E., Washington, D.C. | Sterling Trust Company, Waco, Texas |
| FIVE | 9/2/03 | Federal Express package containing FUFG check number 6078 made payable to "Sterling Trust Company FBO Thomas Alston" in the amount of $30,000 | FUFG offices, 240 Parker Street, N.E., Washington, D.C. | Sterling Trust Company, Waco, Texas |
| SIX | 9/3/03 | Welcome letter from Sterling Trust to defendant RIVERA sent by United States mail | Sterling Trust Company, Waco, Texas | Anthony Rivera, Washington, D.C. |

**(Mail Fraud, Aiding and Abetting, Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 1341 and 2)**

**COUNTS SEVEN THROUGH NINE – MONEY LAUNDERING**

    1.    Paragraphs one through eight and ten through twelve of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

    2.    On or about the dates set forth below, in the District of Columbia, defendants ROBERT HALL, THOMAS ALSTON, and ANTHONY RIVERA, did knowingly engage and attempt to engage in the monetary transactions set forth below by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value

greater than $10,000, such property having been derived from a specified unlawful activity, that is bank fraud:

| COUNT | DATE | TRANSACTION | AMOUNT |
|---|---|---|---|
| SEVEN | 9/10/03 | Defendant ALSTON cashed cashier's check number 65752 | $15,000 |
| EIGHT | 9/11/03 | Defendant RIVERA cashed cashier's check number 65748 | $15,000 |
| NINE | 9/11/03 | Defendant HALL cashed cashier's check number 65746 | $15,000 |

**(Money Laundering, Aiding and Abetting, Causing an Act to be Done, in violation of 18 United States Code, Sections 1957 and 2)**

### COUNT TEN - FRAUD IN THE FIRST DEGREE

1. Paragraphs one through eight and ten through twelve of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2. From between in or about July, 2002, until in or about October, 2003, in a continuing course of conduct, in the District of Columbia, defendants ROBERT HALL, THOMAS ALSTON, and ANTHONY RIVERA engaged in a scheme and systematic course of conduct with intent to defraud and to obtain property of Sterling Trust for themselves by means of false or fraudulent pretenses, representations, and promises, and thereby obtained property of a value of $250 or more belonging to Sterling Trust.

**(Fraud in the First Degree, Aiding and Abetting, in violation of Title 22, District of Columbia Code, Sections 3221(a) and 3222(a)(1))**

### NOTICE OF FORFEITURE

(18 U.S.C. § 981, 982, 1956, 28 U.S.C. § 2461, and Fed. R. Crim. P. 32.2(b)(1))

1. Upon conviction of one or more of the bank fraud or mail fraud offenses alleged in this Indictment, or of conspiracy to commit either or both offenses, defendants ROBERT HALL,

ANTHONY RIVERA, and THOMAS ALSTON each shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) (as incorporated by 28 U.S.C. § 2461(c)), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations, including, but not limited to, the following:

    a.    **$90,000**, which represents a sum of money equal to the amount of money constituting, or derived from, proceeds obtained, directly or indirectly, as the result of the Federal fraud offense(s), in violation of 18 U.S.C. §§ 1341, 1342 and 371.

    b.    A sum of money equal to the total amount of money derived from each offense, or conspiracy to commit such offense, for which each defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

2. Upon conviction of one or more of the money laundering offenses alleged in this Indictment, each defendant shall forfeit to the United States, pursuant to 18 U.S.C § 982(a)(1), the following property:

    a.    All right, title, and interest in any and all property involved in each offense in violation of 18 U.S.C. § 1957 for which the defendant is convicted, and all property traceable to such property, including the following: (1) all money or other property that was the subject of each transaction, transportation, transmission, or transfer in violation of Section 1957, including but not limited to **$90,000** identified as property involved in the offenses described in Counts Seven through Nine of this Indictment; (2) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and (3) all property used in any manner or part to commit or to facilitate the commission of those violations.

    b.    A sum of money equal to the total amount of money involved in each offense for which each defendant

is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

3. Pursuant to 21 U.S.C. § 853(p), as incorporated by Title 18, United States Code, Section 982(b), each defendant shall forfeit substitute property, up to the value of the amount described above, if, by any act or omission of said defendant, the property identified above as subject to forfeiture

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred, sold to or deposited with a third party;
    c. has been placed beyond the jurisdiction of the court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty.

All in accordance with 18 U.S.C. § 981(a)(1) and 28 U.S.C. § 2461 (incorporating 18 U.S.C. § 981(a)(1)) and Rule 32.2(a), Federal Rules of Criminal Procedure.

_____**(Criminal Forfeiture pursuant to Title 18, United States Code, Sections 981 and 982;Title 28 United States Code, Section 2461)**

A TRUE BILL

FOREPERSON

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA