UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT L. HALL, Jr.<br>ANTHONY RIVERA<br>THOMAS ALSTON<br><br>Defendants. | Criminal 06-004 (HHK) |

PRETRIAL ORDER

In order to administer the trial of this case most efficiently and in accordance with governing constitutional and statutory principles, it is this 7th day of August, 2006, hereby,

**ORDERED** any opposition to any pending motion shall be filed no later than August 15, 2006; and is further

**ORDERED** that the parties shall file a Joint Pretrial Statement **and present the Pretrial Statement on a computer disk to Judge Kennedy in Chambers by no later than 2:00 p.m. on September 8, 2006**; and it is further

**ORDERED** that by September 8, 2006, each party shall present to the court's clerk, Tanya Johnson, a **detailed** list of the numerically marked trial exhibits the party intends to introduce at trial; and it is further

**ORDERED** that the government shall disclose Jenks Act statements to defendants by no later than September 25, 2006; and it is further

**ORDERED** that a pretrial conference will be held September 18, 2006, at 9:45 a.m.; and it is further

**ORDERED** that any *MOTION IN LIMNE* must be filed by no later than September 18, 2006; and it is further

**ORDERED** that trial will commence October 10, 2006, at 9:45 a.m .with the selection of the petit jury which will be selected in the manner described in Appendix A; and it further

**ORDERED** that counsel shall be governed by the rules, procedures, and policies set forth in Appendix B; and it is further

**ORDERED** that any objection to this Pretrial Order shall be filed no later than **August 18, 2006**; and it is further

**ORDERED** that the Pretrial Statement shall contain the following:

(1)     a concise, neutral statement describing the case suitable for reading to the jury panel at the commencement of voir dire. If after a good faith effort to reach agreement regarding the statement, each party should present his own statement;

(2)     any stipulation sought by a party and whether agreement was reached regarding the requested stipulation;

(3)     proposed voir dire questions;

(4)     proposed jury instructions. Any proposed instruction that appears in the "Red Book" need only be identified by reference to the caption and number of the instruction in the Red Book. **All** other proposed instructions, including any instruction that appears in a treatise setting forth pattern instructions, shall be set forth verbatim and shall cite authority to support the giving of the instruction. Counsel are referred to Appendix C which contains a prototype of the format required by this court for proposed jury instruction submissions that are not contained in the Red Book;

(4)     proposed verdict form including any proposed special

interrogatories;

(5)     a list of any expert or opinion witnesses;

(6)     a list of any prior convictions the Government intends to use for impeachment or for any other purpose;

(7)     appropriate memoranda, with citations to legal authority, in support of any evidentiary issues which counsel may reasonably anticipate will arise at trial.

                                           Henry H. Kennedy, Jr.
                                           United States District Judge

# APPENDIX A
## CRIMINAL JURY SELECTION AND ADMINISTRATION PROCEDURES

In the upcoming trial of this case, counsel are on notice of and shall be governed by the following jury selection procedures:

1) The number of prospective jurors whom the court estimates will be needed to accommodate the selection of a petite jury of 12 and two alternates will be summoned and will comprise the jury panel.

2) Reference to panel members and petite jurors will be by juror number and not by name.

3) The members of the panel will be seated in the courtroom in the same order as they appear on the jury list, starting from the top of the list. Seating will start on the left side of the courtroom with the first panel member seated in the seat closest to the left wall of the courtroom as I face the courtroom. There will be eight panel members seated on a row.

4) Each member of the panel will be given an index card and a pencil and told to indicate their juror number in the top right corner of the card.

5) The clerk will swear the jury panel using the standard oath.

6) The court will conduct the voir dire in the following manner:

a) The panel will be informed of the nature of the case, the purpose of the voir dire, and the procedures that will be followed in conducting the voir dire. Specifically the jurors will be told that (1) a number of questions will be asked of them,(2) If a juror has a response to a question-- but only if he /she has a response other than "no" or "not applicable"--the juror should indicate the number of the question.
b) The questions will be read by me, preceded by the number of the question
c) After the questions are read, the clerk will collect the cards in the order in which the jurors are seated and bring them to me
d) Each panel member will be questioned separately in the jury room regarding their answers to the voir dire questions until there are enough prospective jurors to accommodate the seating of a jury of 12 plus two alternates and the exercise of peremptory challenges.

Following my questioning counsel will be permitted to engage in further brief questioning which (1) does not repeat any question or substance of any question that has been asked and (2) that is within the scope of a preceding question. Any motion to strike a juror for cause must be made immediately after the questioning of the panel member and the panel member has left the jury room.

7) Peremptory challenges will be conducted by the "Arizona Method"; the Government will have six challenges (plus one for the alternates only) and the Defendants 10 challenges (plus one for the alternates only) that will be indicated on a form that will be provided. The form will have a place to indicate a challenged juror's number, race, and gender. (In addition to indicating the juror's number you should also indicate the number on the jury panel sheet where the juror appears. This number is on the left side of the jury panel sheet). Before the voir dire begins a decision will be made regarding the seats that will be occupied by the alternates.

## APPENDIX B

The following rules, procedures, and policies (collectively "directives") will govern this trial. Counsel must be thoroughly familiar with these directives. **If counsel either objects to or does not understand a directive, he/she must either make an objection or seek clarification by no later than August 18, 2006. In the absence of an objection or request for clarification, each participant is deemed to be informed of the directives, understand them, and have no objection to them. The court does not expect and will not permit these directives to be honored in the breach.**

1)   **TRIAL SCHEDULE**: The trial will be conducted **Monday through Thursday** from approximately 9:45 A.M. to 12:30 p.m. and from approximately 1:45 p.m. to 4:45 P.M., unless participants are otherwise notified. There normally will be a 15 minute recess in the morning at approximately 11:00 A.M. and in the afternoon at approximately 3:00 P.M.  Jury deliberations will proceed each weekday.  Trial will convene and resume <u>promptly</u> at the designated times each day.  Counsel and their clients shall be available in the courtroom and **seated** at their respective counsel tables **before court is scheduled to begin or resume**.

2)   **WHEN TO STAND**:  The clerk of the court will make the traditional "All Rise" announcement only once, at the commencement of the court's docket for the day.  At all other times, court proceedings will commence with the deputy's announcement, "Remain Seated and Come to Order." As this announcement commands, counsel and the parties shall remain seated.  Counsel and the defendant(s) shall also remain seated when the jury is entering or leaving the courtroom.  **All** objections or other statements to the court by counsel shall be made while standing.

3)   **DECORUM**:  Everyone within the well of the court, shall sit upright and not slouch in their chair.  The Deputy U.S. Marshals assigned to this courtroom are directed to enforce this directive. All statements by counsel should be directed to the court and not to opposing counsel.

4)   **LECTERN**: Unless counsel have a mobile microphone or  leave is otherwise given, counsel shall interrogate witnesses, make opening statements and closing arguments only from the lectern.

5)   **IRRELEVANT EXAMINATION AND ARGUMENT**:  Only

questions relevant to the issues presented by this case may be posed to witnesses. Questions only calculated either to inject levity into the proceedings, or to ingratiate the examiner to the jury, or to serve some purpose not addressed by the Federal Rules of Evidence, are not permitted. Counsel shall not communicate information about himself or herself to the jury at any time during this trial, whether during questioning or argument, *e.g.*, "You say the man you saw was a large man, I am 5' 10" tall and weigh 195 lbs., was he bigger than me, or "Like you, Ms. Jones, I have twins. . . .," "You are from Massachusetts, as am I wouldn't you say that people from Massachusetts tend to be . . . ".

6) **SEQUENCE AND ORDER OF EXAMINATION AND ARGUMENT**: . The order of examining witnesses will be: (1) direct examination, (2) cross examination, and (3) re-direct examination. Re-cross examination is rarely permitted. If re-cross examination is permitted, re-direct will be permitted. When making or responding to arguments, each defense attorney who wishes to be heard on the matter shall speak during the defense round of argument, *e.g.*, government's argument with respect to matter X will be followed by defense counsel A's argument, followed by defense counsel B's argument, followed by defense counsel C's argument, until completion of all defense arguments, which then will be followed by the government's rebuttal argument (if the court has not ruled).

7) **SEEKING CONSENT**: With respect to any motion or request that counsel believes may not be objected, counsel must first inquire of opposing counsel whether there is an objection to the motion or request **before** addressing the matter to the court, *e.g.*, a request to call a witness out of turn, motion to introduce exhibit not on the witness list, request to redact document, etc.

8) **SWEARING OF WITNESSES**: A witness will be sworn only once; thus, if the testimony of a witness is interrupted by an adjournment, that witness will not be sworn again the following day.

9) **INTERRUPTION OF TESTIMONY**: If a witness's testimony is interrupted by a recess or adjournment, the witness will take the witness stand to resume with his or her testimony **after** the jury is seated following the recess or adjournment. Therefore, after a recess or adjournment is taken, at the time appointed for the witness to resume his or her testimony, the witness will sit in the first row of the audience area and then proceed to the witness stand after the jury has been seated.

**10)**   **BENCH CONFERENCES**: Bench conferences are discouraged and should be requested only when **absolutely** necessary. Counsel should not expect requests to approach the bench to be routinely granted. Counsel should always consider whether the issue counsel wishes to address at the bench can wait until a recess has been called.[1]

**11)**   **OBJECTIONS**: Counsel should not make "speaking" objections in front of the jury. An objection shall be made by: (1) standing, (2) immediately saying "objection" and, if the court does not rule immediately, (3) stating the basis for the objection in no more than four words *e.g.*, "Objection, hearsay," "Objection, lack of foundation," "Objection, asked and answered." The objection or argument, "I don't know where he is going with this," is not a proper objection, violates the court's directive, and will not be sustained. After the court has ruled on **any** motion or objection, counsel should proceed to the next question or item of business. **Counsel shall not attempt to argue further unless a specific request is made of the court to do so and permission for such further argument is specifically given by the court.** After the court has ruled, it is not necessary, and counsel shall not "note an objection for the record."

**12) "PRELIMINARY MATTERS:"** "Preliminary matters" rarely will be entertained at the time announced for the commencement or resumption of the trial. Thus, in the morning when the case is called by the clerk and it is established that counsel and their clients are present in court, the jury will be called into court and the taking of testimony will begin or resume. "Preliminary matters" should be anticipated and raised at the end of the trial day. In the rare circumstances when a "preliminary matter" could not be raised at the end of the trial day, the party wishing to have a matter addressed before the resumption of the trial must notify the court and the other parties by **e-mail by 7:00 A.M.** My e-mail address for this purpose is Kennedy_Chambers@dcd.uscourts.gov. A copy should be sent to my law clerk, Brigham Bowen at Brigham_Bowen@dcd.uscourts.gov, and to the courtroom clerk, Tanya Johnson, at Tanya_Johnson@dcd.uscourts.gov. The opposing party or parties must submit their response, if any, by **8:30 A.M.** to the court and to all parties. Such response will be submitted to the court at the e-mail addresses above and to counsel at their email addresses. Normally, the

---

[1]   Counsel may seek to convene a bench conference if counsel is to engage in a line of inquiry on direct or cross examination which reasonably necessitates pre-clearance, *e.g.*, missing witness/evidence or potentially inflammatory area of interrogation.

court will rule on the matter without further argument.

13) **RULE ON WITNESSES**: Except for the parties or their representatives, all witnesses will remain outside the courtroom while testifying and when preparing to resume interrupted testimony. Counsel shall instruct witnesses not to discuss their testimony with other witnesses after they leave the witness stand. Except for a criminal defendant-witness (because of Sixth Amendment implications), counsel calling a witness to testify shall have no further discussions with that witness concerning any aspect of the testimony already given or anticipated after the witness has been tendered for cross examination and until such time as the witness has been tendered back for re-direct examination. Persons acting as agents of the counsel who calls a witness (*e.g.*, law enforcement officers or investigators) will also abide by these constraints. Regarding defendant-witnesses, counsel are directed to the D.C. Circuit's opinion in *United States v. McLaughlin*, 164 F.3d 1, 4-7 (D.C. Cir. 1998), *cert. denied*, 119 S. Ct. 1485 (1999).

14) **WITNESSES ON CALL**: Once the trial begins, witnesses shall be put on call at the peril of the calling party. The trial will **not** be recessed because a witness on call is unavailable, except in extraordinary circumstances. The court will endeavor to accommodate out-of-town and expert witnesses, if counsel alerts the court ahead of time. The party calling a witness shall arrange for that witness's presence until cross examination is completed, including the following trial day if necessary. The failure to have a witness present for cross examination following direct examination is grounds to strike the witness's testimony.

15) *SUA SPONTE* **JURY INSTRUCTIONS**: Should events during trial necessitate a cautionary jury instruction, the party requesting the instruction shall write the instruction as he/she wants the judge to read it to the jury. Failure to do so shall be deemed a waiver of any such request.

16) **OPENING STATEMENTS AND CLOSING ARGUMENT**: The court will enforce the traditional rules regarding opening statements and closing arguments. If counsel believes there is a basis to object during another attorney's opening statement, or closing argument, counsel should do so. In making closing arguments, counsel shall be limited by the evidence presented during trial, and are reminded of the prohibition against appealing to the juror's prejudices. Moreover, during closing arguments, and throughout the trial, counsel **SHALL** <u>**NOT**</u>:

      1.     Comment adversely on the failure of any defendant to testify on his or her own behalf;
      2.     Make statements of personal belief to the jury;
      3.     Make personal attacks on other counsel in the case;
      4.     Appeal to the self interest of the jurors;
      5.     Make potentially inflammatory racial, political, or religious comments;
      6.     State any personal opinions concerning the credibility of witnesses or that imply personal knowledge regarding the subject matter of the questioning;
      7.     Argue inferences from matters that are not in evidence or that have been excluded, or address facts not in evidence;
      8.     Allude to the appellate processes;
      9.     **Make any remarks likely to invoke the jury's sympathy or to excite the jury's prejudice and passions**, e.g. reference to burdens of incarceration, appeals to return defendant to his family, etc;
      10.    Make any statement regarding the consequences of the jury's verdict, including any "messages to society," the potential punishment for the crime; or the burdens of jail or prison;
      11.    Make any "golden rule" argument. That is, the government shall not ask members of the jury to place themselves or one of their relatives in the shoes of the victim, and the defense counsel shall not ask any one of the jurors to place themselves or one of their loved ones in the shoes of the defendant.

**22)**    **NOTE TAKING**: Jurors will be provided notepads and pencils and will be allowed totake notes.

**23)** **INSTRUCTIONS**:  The jury will be given a hard copy of the court's final instructions.

## APPENDIX C

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 14
## OWNERSHIP OF TRADEMARK BY EXCLUSIVE DISTRIBUTOR

Likewise, an exclusive distributor may own a particular trademark instead of a manufacturer or supplier. An exclusive distributor is a company, such as MSI, that agrees with a manufacturer or supplier of a particular type of goods, such as Sunmatch, that the manufacturer or supplier will only supply its goods to that particular distributor and not to anyone else.

When determining whether an exclusive distributor owns the rights to a particular trademark instead of a manufacturer or supplier, you may consider a number of factors including: (1) which party first affixed the mark onto the product; (2) which party's name appeared with the trademark; (3) which party maintained the quality and uniformity of the product; (4) with which party did the public identify as standing behind the product; (5) which party paid for advertising and promotion for the product; (6) which party benefited from the good will and reputation the public associates with the mark. Good will and reputation are a buyer's tendency to do business with a company that offers the type and quality of products that the buyer wants and expects. Good will and reputation can relate to a particular product, or to a company as a whole, or both. *Premier Dental Products Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 854 (3d Cir. 1986), *cert. denied*, 479 U.S. 950 (1986); *Omega Nutrition U.S.A., Inc. v. Spectrum Marketing, Inc.*, 756 F. Supp. 435, 438 (N.D. Cal. 1991); *Wirst-Rocket Mfg. Co. v. Suanders*, 379 F. Supp. 902, 910, 914 (D. Neb.

1974), *modified on other grounds,* 516 F.2d 846 (8th Cir. 1975); 2 McCarthy, Thomas J., *McCarthy on Trademarks and Unfair Competition*, § 16.16 [1] at 16-66-67 (3d ed. 1995).

### OBJECTION TO PLAINTIFF'S PROPOSED INSTRUCTION NO. 14 OWNERSHIP OF TRADEMARK BY EXCLUSIVE DISTRIBUTOR

Defendant objects to this instruction as it ignores the fact that "it is settled law that between a foreign manufacturer and its exclusive United States distributor, the foreign manufacturer is presumed to own the mark unless an express agreement between them provides otherwise." *Global Maschinen Gmbh v. Global Banking Sys. Inc.,* 227 U.S.P.W. 862, 866 (TTAB 1985); U.S. Patent and Trademark Office, *Trademark Manual of Examining Procedures*, § 1201.06(a); 4 J. McCarthy, *McCarthy on Trademarks*, § 29.02 at 29-12 (3d ed. 1994).

Defendant also objects because the instruction poses a hypothetical regarding the parties which is in direct variance with the evidence to be presented at trial. Specifically, Sunmatch denies that it ever entered into an agreement with MSI in which Sunmatch "will only supply its goods to that particular distributor and not to anyone else."

Defendant also objects to this instruction because it omits from the list of factors "which party invented or created the mark." *McCarthy on Trademarks*, § 16.16[1] at 16-66.

Accordingly, the Court should utilize Defendant's Proposed Instruction No. 17 which suffers from none of these flaws.